# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JASON E. STEVENS, | No. 57858-1-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF HEALTH, NURSING CARE QUALITY ASSURANCE COMMISSION, | PUBLISHED OPINION |
| Respondents. | |

CRUSER, A.C.J. — The Department of Health, Nursing Care Quality Assurance Commission (Department) suspended Jason Stevens' nursing license in December 2019 for unprofessional conduct, after holding an administrative hearing. Stevens filed a petition for judicial review in March 2020. The Department filed a motion to dismiss in June 2022. Before the hearing on the motion to dismiss, Stevens noted the action for trial. Even though the case was noted for trial, the superior court granted the motion to dismiss because the court had not received the complete administrative record and the case was therefore not ready to be scheduled pursuant to former THURSTON COUNTY SUPER. CT. LOCAL CIV. R. 40(b)(3)(C) (2018) (LCR 40(b)(3)(C)).

Stevens argues that the Department was at fault for causing the delay in producing the administrative record, and as such, the case should not have been dismissed according to CR 41(b)(1). The Department contends that it was Stevens who caused the delay in producing the

record, and as such, the action was properly dismissed. Stevens also argues that because he noted the action for trial before the hearing on the motion to dismiss, under CR 41(b)(1), the trial court erred in granting the motion. With respect to this latter argument, the Department counters that the trial court properly dismissed the case because Stevens failed to comply with a local court rule in noting the action for trial, and therefore, his note for trial was insufficient.

Whether the action was properly dismissed hinges on which party caused the delay in noting the case for trial, whether the manner in which Stevens noted the case for trial was sufficient, and the interaction between CR 41(b)(1), LCR 40(b)(3)(C), and the Administrative Procedure Act. Because the Department caused the delay in producing the record, and because Stevens did note the case for trial before the hearing on the motion to dismiss in a manner sufficient to meet the time limit exception listed in CR 41(b)(1), the trial court erred in dismissing Stevens' petition. Accordingly, we reverse and remand for proceedings consistent with this opinion.

FACTS

I. AGENCY PROCEEDINGS

During an administrative hearing in July 2019, the Department found that Jason Stevens engaged in unprofessional conduct involving the misuse and misappropriation of controlled substances. In December 2019, the Department suspended Stevens' nursing license for unprofessional conduct after finding that he misappropriated narcotics and was impaired while working. The Department issued its final order, findings of fact, and conclusions of law on December 6, 2019. On March 13, 2020, the Department entered its amended findings of fact, conclusions of law, and final order.

## II. REQUEST FOR RECORD & PETITION FOR JUDICIAL REVIEW

On July 31, 2019, Stevens sent a fax to the Department's Adjudicative Clerk's Office (ACO) requesting a copy of the administrative record and information on how to pay for it. He wrote, "Please also let me know cost $ if any for copies so I may forward payment." Clerk's Papers (CP) at 64. The ACO did not respond to the fax.

On March 19, 2020, Stevens filed a petition for judicial review in Thurston County Superior Court. On April 8, 2020, the ACO informed Stevens that it received his petition for judicial review, and instructed him to contact a court reporter to both arrange and pay for the administrative record to be transcribed and provided to the court. In its letter, the ACO stated, "The court reporter is Capitol Pacific Reporting their phone number is . . . ." *Id.* at 81. The letter explained that the ACO would transmit the agency record to the court upon receipt of the transcript.

On the day that Stevens filed his petition, the court sent the parties notice of the trial setting, which was scheduled for July 24, 2020. On August 14, 2020, the court struck the trial date because it did not have the administrative record.

In March 2021, Stevens contracted with court reporter Rose Landberg, with Lickety Split Transcripts to transcribe the July 2019 administrative hearing. Stevens paid Landberg $1,821.25. The same month, Stevens filed a statement of arrangements. He notified the Department of the statement of arrangements and indicated that he ordered the transcript from Lickety Split Transcripts and that it would be ready by April 5, 2021. In response, the ACO sent Stevens' attorney a copy of the same letter it sent back in April 2020. The Department did not inform Stevens that it had any objection to Lickety Split Transcripts serving as the court reporter, nor did it transmit the agency record to the court. At that time, around May or June 2021, Stevens believed

that Landberg would file the transcript with the ACO shortly, if she had not already done so. However, due to a misunderstanding on Landberg's part, she did not file the transcript with the court or provide a copy to the ACO but, rather, provided a PDF of the transcript to Stevens' wife.[1] Once Landberg became aware of the mistake she sent a digital copy of the transcript to the Department in May 2022.

### III. MOTION TO DISMISS

In April 2022, the Department filed a motion to dismiss for want of prosecution. The court scheduled a hearing for May 13, 2022. On May 9, 2022, Stevens filed an amended statement of arrangements, confirming that he had arranged and paid for the transcript, and noted the case for trial. In the amended statement of arrangements, Stevens stated that the transcript would be submitted after a hearing on a motion to protect, which according to Stevens, was scheduled for May 20, 2022.

On May 12, 2022, Stevens' attorney sent an email to the ACO requesting that it preserve the record, per RCW 34.05.566, and coordinate to arrange for payment. The ACO clerk explained, however, that shortly after receiving the letter via email, she received another letter recalling the initial letter and, as such, took no action on the letter nor inquired further.

The trial court heard arguments on May 13, 2022. The Department argued that Stevens did not effectively note the case for trial because the case was not ready for trial or hearing at the time as defined by LCR 40(b)(3)(C). The court granted the Department's motion to dismiss. The court

---

[1] In her declaration, Landberg stated "I completed the transcription and provided it in PDF format to Mrs. Stevens in April 2021. She paid me for the job. I did not file the transcript anywhere else as I was told it was for a RALJ appeal, which usually does not require a transcriptionist to file it with the court." CP at 101.

concluded that because the court had not received the administrative record or the transcript, the note for trial setting did not comply with the local court rules. Because the trial notice did not comply with LCR 40(b)(3)(C), the court held that it was not a proper noting of the case for trial. The court alternately stated that "no action" had been taken on the case, and that the actions that had been taken were insufficient. Verbatim Rep. of Proc. (VRP) (May 13, 2022) at 17. The court did not explain why, if the transcript and administrative record are required to be filed with the court *before* a case can be noted for trial, it had nevertheless set this petition for trial in July 2020.

The trial court denied Stevens' subsequent motion for reconsideration. In so deciding, it found that Stevens' prior counsel was responsible for the delay rather than the Department. Stevens now appeals, assigning error to the trial court's dismissal of his petition for judicial review and denial of his subsequent motion for reconsideration.

## ANALYSIS

### DISMISSAL FOR WANT OF PROSECUTION

Stevens argues that the trial court erred in dismissing his petition for judicial review for two reasons. First, he argues that dismissal was improper because he noted the case for trial before the hearing on the Department's motion to dismiss, triggering an exception to mandatory dismissal contained in CR 41(b)(1). And second, because the Department caused the delay in setting the case for trial by failing to produce the administrative record in violation of the Administrative Procedure Act, dismissal under CR 41(b)(1) was improper. The Department responds that Stevens' May 9, 2022 trial notice was ineffective because the case was not ready to be tried under LCR 40(b)(3)(C), and that the delay in transmitting the record was caused solely by Stevens.

We conclude that it was the Department's responsibility to both arrange for transcription of the hearing and to transmit the administrative record to the superior court under the plain language of RCW 34.05.566 and, as such, the Department was responsible for the delay in getting this petition heard. Accordingly, the superior court's dismissal for want of prosecution is reversed. Dismissal was also improper because Stevens' May 9, 2022 trial notice was sufficient to preclude dismissal under the second time limit exception found in CR 41(b)(1), even though the case was not at that time ready for trial because it was not in full compliance with LCR 40(b)(3)(C).

A. Legal Principles

In general, for a case to be properly noted for trial, the plaintiff must do so "within [one] year after any issue of law or fact has been joined." CR 41(b)(1). In Thurston County, a case must be ready for scheduling at the time it is noted for trial. Cases involving appeals from administrative agencies are only ready for scheduling once the complete administrative record has been provided to the court. LCR 40(b)(3)(C). The relevant portions from these two court rules are expanded upon below.

*1. Civil Rule 41(b)(1)*

We review a trial court's interpretation of court rules de novo. *Bus. Servs. of Am. II, Inc. v. WaferTech LLC*, 174 Wn.2d 304, 307, 274 P.3d 1025 (2012).

The trial court must dismiss an action for want of prosecution if CR 41(b)(1) applies. *Id.* at 308. CR 41(b)(1) provides,

> Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the plaintiff . . . neglects to note the action for trial or hearing within [one] year after any issue of law or fact has been joined, unless the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss. . . . If the case is noted for trial before the hearing on the motion, the action shall not be dismissed.

6

The rule as written contains two exceptions. The language regarding the first exception to the time limit states that the plaintiff must note the case for trial "within [one] year after any issue of law or fact has been joined, *unless the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss*." *Id.* (emphasis added). In other words, if the Department caused the delay, resulting in Stevens noting the case for trial after the one-year time limit had already elapsed, then the trial court should not have dismissed Stevens' action. The second exception to the one-year time limit in CR 41(b)(1) states that "If the case is noted for trial before the hearing on the motion, the action shall not be dismissed." The rule does not expand on whether the notice must follow local court rules in order for this exception to apply.

### 2. LCR 40(b)(3)(C)

Thurston County Local Court Rule 40 requires that a case be ready for scheduling at the time it is noted for trial. LCR 40(b)(3)(C). A case involving an appeal from an administrative agency is only ready for scheduling once the administrative record is delivered to the court. *Id.* The rule reads, in relevant part:

> 3) Readiness for Scheduling. The court will enter a case schedule order only if the case is ready to be scheduled. If a case is not ready on its trial setting date, the court will strike the matter from the administrative docket and will not continue it.
> . . . .
>
> (C) Appeals from administrative agencies, district court, and municipal courts. Cases in which the court is sitting in an appellate capacity are ready to be scheduled only after the appellate record has been delivered to the county clerk or the appellant certifies that the record at this court is complete. Additionally, the court may determine that the appeal is not ready if the administrative record was submitted in a form that does not substantially comply with these local court rules.

*Id.* (italics omitted).

7

### 3. Administrative Procedure Act

The Administrative Procedure Act (APA) intends "to clarify the existing law of administrative procedure, to achieve greater consistency with other states and the federal government in administrative procedure, and to provide greater public and legislative access to administrative decision making." RCW 34.05.001. RCW 34.05.566 addresses the costs associated with producing agency records for review. The Act provides, in relevant part:

> (1) Within thirty days after service of the petition for judicial review, or within further time allowed by the court or by other provision of law, *the agency shall transmit to the court the original or a certified copy of the agency record for judicial review of the agency action*. The record shall consist of any agency documents expressing the agency action, other documents identified by the agency as having been considered by it before its action and used as a basis for its action, and any other material described in this chapter as the agency record for the type of agency action at issue, subject to the provisions of this section.

> (2) If part of the record has been preserved without a transcript, *the agency shall prepare a transcript for inclusion in the record transmitted to the court*, except for portions that the parties stipulate to omit in accordance with subsection (4) of this section.

> (3) The *agency may charge a nonindigent petitioner* with the reasonable costs of preparing any necessary copies and transcripts for transmittal to the court. *A failure by the petitioner to pay any of this cost to the agency relieves the agency from the responsibility for preparation of the record and transmittal to the court*.

RCW 34.05.566 (emphasis added).

B. Application

Stevens argues that "under CR 41(b)(1), a court does not have authority to dismiss a case if the moving party caused the delay." Br. of Appellant at 16. He contends that "the Department caused the delay because it did not comply with its obligations under the [APA]." *Id.* He also argues that the trial court erred in dismissing his petition "because he noted the case for trial before the hearing on the Department's motion to dismiss." *Id.* at 14 (boldface omitted). The Department

responds that it was Stevens who caused the delay in producing the administrative record because he failed to pay the costs to prepare the record, thereby causing the delay in noting the case for trial on time. While Stevens did not properly note the case for trial within the statutory time limit of one year outlined in CR 41(b)(1), both exceptions to the dismissal requirement found in CR 41(b)(1) apply because the Department caused the delay in failing to fulfill its statutory duties to produce the administrative record, and because Stevens noted the case for trial before the hearing.

> *1. Dismissal was improper because the Department caused the delay by failing to fulfill its duty to produce the administrative record.*

Stevens argues that because he noted the case for trial before the hearing on the motion to dismiss, and because the "Department caused the trial setting delay by failing to produce the administrative record," his petition for judicial review should not have been dismissed under CR 41(b)(1). *Id.* at 16 (boldface omitted). He asserts that "the Department did not comply with its legal obligations under the [APA]," and therefore "dismissal was inappropriate." *Id.* at 1. Stevens relies on the plain language in RCW 34.05.566—arguing that it "clearly sets forth the responsibilities of the agency and the petitioner." *Id.* at 16. Specifically, the agency is responsible for producing the administrative record within 30 days of a petitioner filing a petition for judicial review, and the agency is responsible for providing the record to the court. The petitioner's only duty under the statute is to " 'pay reasonable costs,' " which Stevens sought to do in July 2019 by faxing an inquiry to the ACO. *Id.* at 17 (quoting RCW 34.05.566(3)).

The Department argues that it was not the agency, but Stevens, who caused the delay in providing the court with the administrative record. According to the Department, Stevens' "failure to timely pay the reasonable costs of the court transcript and other necessary copies of the agency record was the sole reason for the delay." Br. of Resp't at 17. However, the ACO never responded

9

to Stevens' July 2019 fax inquiring about paying for the record. Nor did the ACO, or any agency member, contact Stevens regarding payment for the record. The Department argues that Stevens' fax "cannot possibly be a request for the costs of an administrative record," because the fax was sent in July 2019, and at that point, no final order had been issued, nor had Stevens filed a petition for judicial review. *Id.* at 19 n.4. As such, the Department argues, the record was not yet complete, and therefore, Stevens' fax did not count as a request for the costs.

The statute states, "Within [30] days after service of the petition for judicial review, . . . the agency shall transmit to the court the original or certified copy of the agency record for judicial review of the agency action." RCW 34.05.566(1). Stevens filed a petition for judicial review in Thurston County Superior Court on March 19, 2020. The trial court notified the parties of the trial setting on the same day. Accordingly, based on the plain language of the statute, the Department was responsible for providing the agency record to the court by April 18, 2020, which it failed to do.

The Department did not fulfill its statutory duties to provide the administrative record to the court within the 30-day period laid out in RCW 31.05.566(1). Instead, on April 8, 2020, the ACO sent Stevens a letter stating, "The party seeking review is responsible for arranging for, and paying the court reporter for preparation of the transcript." CP at 81. The letter not only directs Stevens to contact a court reporter and to pay the court reporter to transcribe the record and send it to the court, but it instructs Stevens to use the reporter of the *agency's choosing* (Capitol Reporting). These instructions contradict the language in RCW 34.05.566, which says that "the agency shall transmit [the record] to the court," and goes on to explain that "if part of the record has been preserved without a transcript, the agency shall prepare a transcript for inclusion in the

record transmitted to the court." The letter from the ACO shifts the Department's responsibility onto Stevens.

In regard to payment for the record, RCW 34.05.566 states, "The agency may charge a nonindigent petitioner with the reasonable costs of preparing any necessary copies and transcripts for transmittal to the court." The statute does not state that a petitioner must contract with a court reporter and arrange for the record to be transcribed. The letter from the ACO states, "The ACO is not required to transmit the agency record until all necessary transcripts are received and the party seeking review pays the agency's cost of preparing the record." CP at 82. This goes against RCW 34.05.566, which, to reiterate, says that "*the agency* shall transmit [the record] to the court . . . *the agency* shall prepare a transcript . . . [*t*]*he agency* may charge a nonindigent petitioner . . ." (Emphasis added.) Through the letter, the ACO neglected their administrative duties and delegated those duties to Stevens.

The Department argues that Stevens' failure to make reasonable and timely payment is the sole cause of the delay in producing the record for the court. Specifically, the Department argues that the agency was relieved of its duty to produce the record because Stevens failed to provide the reasonable costs to prepare the record. The relevant section of the statute states, "A failure by the petitioner to pay any of this cost to the agency relieves the agency from the responsibility for preparation of the record and transmittal to the court." RCW 34.05.566(3).

The Department conflates the question of who has the duty to prepare the record with the question of who has the obligation to *pay for it*. The former obligation rests with the Department and the latter rests with Stevens, as he readily acknowledged throughout the litigation below. The Department is correct that the agency would be relieved of the duty to produce to the administrative

record if the only issue were that Stevens did not pay the required costs. However, that was not the central cause of the delay in producing the record in this case. Rather than requesting the appropriate payment from Stevens within the 30-day window in which the agency was required to produce the record, the ACO neglected its statutory duties and tried to delegate those duties to Stevens in the April 2020 letter.

The language in RCW 34.05.566 does not state that it is the responsibility of the petitioner to proactively reach out to the agency to arrange for paying for the administrative record. Even if that were the law, Stevens *did* proactively reach out to the ACO to inquire about whether he needed to provide payment for the record in the fax he sent on July 31, 2019. The fax reads, "Please send a complete copy of the record for the case . . . . Please also let me know what cost $ if any for copies etc so I may forward payment." CP at 64 (boldface omitted). The ACO never responded to his inquiry.

In the Department's response to petitioner's motion for reconsideration, the Department argued that Stevens' fax was a public records request, not an administrative records request, and therefore, it did not suffice as "an attempt to make arrangements to have the administrative record transmitted to this Court and to pay for the cost." *Id.* at 97. However, the Department does not offer any support for this argument aside from stating that Stevens referred to the fax as a public record request in his declaration. Regardless, the distinction between a public records request and an administrative records request appears to be irrelevant because the statutory language places the responsibility on the agency to produce the administrative record within 30 days of the filing of the petition for judicial review, and it also places the responsibility on the agency to charge the petitioner reasonable costs.

Additionally, Stevens in fact did make payments to prepare the transcripts and send the record to the court. He contracted with certified court reporter Rose Landberg, through Lickety Split Transcripts in March 2021 and paid $1,821.25 to transcribe the administrative hearing. He confirmed this in a statement of arrangements which he filed in the superior court on March 17, 2021, and sent to the ACO as well. The ACO responded by resending Stevens a copy of the April 2020 letter, which was unhelpful to Stevens not only because it reiterated, incorrectly, that Stevens was required to use Capitol Reporting as the transcriber, but also because it contained no new instructions to him about how get the record transmitted to the court.

The Department relies on Ms. Landberg's erroneous failure to file the transcript with the superior court for its contention that it was Stevens who caused the delay in producing the record. Although it is true that the transcript prepared by Lickety Split Transcripts was not provided to the court before the case was noted for trial and before the hearing on the motion to dismiss, Stevens' actions show that he made a reasonable effort to fulfill his duty to pay for the administrative record. He reached out to the ACO in July 2019 to inquire about payment, contracted with a court reporter, and ultimately paid nearly $2,000 to prepare the record. These facts cut against the Department's argument that Stevens caused the delay in failing to make reasonable payments. Moreover, as we note above, it was the Department's obligation to produce both the administrative record and to arrange for transcription of the hearing, notwithstanding Stevens' obligation to pay the reasonable cost of producing these items. As such, it was the Department, not Stevens, who caused the delay in noting the case for trial, and the trial court erred in dismissing the case.

13

*2. Dismissal was improper because Stevens noted the case for trial before the hearing on the Department's motion to dismiss for want of prosecution.*

The Department contends that Stevens' trial notice should not have precluded dismissal under CR 41(b)(1) because the case was not ready to be scheduled for trial under LCR 40(b)(3)(C). We disagree.

Pursuant to CR 41(b)(1), "[i]f the case is noted for trial before the hearing on the motion [to dismiss], the action shall not be dismissed." In *Snohomish County v. Thorp Meats*, 110 Wn.2d 163, 168–69, 750 P.2d 1251 (1988), the supreme court held that

> the final sentence of CR 41(b)(1) means precisely what it says, a case shall *not* be dismissed for want of prosecution if it is noted for trial before the hearing on the motion to dismiss. The rule as it has read since 1967 thus limits the power of the trial court to dismiss for failure to prosecute after the issue is joined and the case noted for trial.

In explaining the history of the rule, the court explained that before CR 41(b)(1) was adopted in 1967, under its predecessor, a party could only avoid dismissal for want of prosecution by noting the action for trial within one year of issues being joined. *Id*. at 167-68. Critically, when CR 41(b)(1) was adopted, the final sentence was added stating that a second exception to the time limit applies when a party notes the action before the hearing on the motion. The supreme court further explained that "[t]his sentence was promulgated to encourage cases to be heard on the merits, the courts recognizing that involuntary dismissal for want of prosecution 'is punitive or administrative in nature and every reasonable opportunity should be afforded to permit the parties to reach the merits of the controversy.' " *Id*. at 168 (quoting *Yellam v. Woerner*, 77 Wn.2d 604, 608, 464 P.2d 947 (1970)).

In *Thorp Meats*, as is the case here, the appellants filed a note for trial setting prior to a hearing on the respondent's motion to dismiss. *Id*. at 165. The superior court granted the motion

14

to dismiss, basing its decision on "the court's inherent discretion to dismiss actions." *Id*. The court of appeals reversed the dismissal, and the supreme court affirmed. The court explained, "It would be illogical to now rule that while dismissal under CR 41(b)(1) is mandatory if the circumstances fit within the rule, nondismissal somehow requires or even allows the exercise of a trial court's discretion in this situation." *Id.* at 168.

Here, Stevens noted the case for trial on May 9, 2022. The hearing for the motion to dismiss was held on May 13, 2022. In granting the motion to dismiss, the trial court reasoned that because it had not received the complete administrative record, Stevens' note for trial setting was inoperative because the requirements of LCR 40(b)(3)(C) had not been satisfied. The court stated that "noting it for trial setting is insufficient, and that doesn't comply with our rule. We can't schedule it unless we have your availability dates and the administrative record." VRP (May 13, 2022) at 13.

The trial court concluded that because Stevens failed to comply with the logistics outlined in LCR 40(b)(3)(C) prior to his action for trial, he was not entitled to the benefit of the clear language of CR 41(b)(1). However, this reasoning undermines CR 41(b)(1)'s intent to have cases heard on their merits rather than dismissed due to procedural delinquencies. It bears repeating that Stevens attempted to have this record completed and transmitted to the superior court, even when the obligation for doing so *rested with the Department*. The trial court's reasoning undermined CR 41(b)(1) and frustrated the administration of justice.

Our supreme court's decision in *Yellam* is instructive here:

It is apparent the modification of [CR 41(b)(1)] was promulgated to encourage cases to be heard on the merits by allowing plaintiffs, who may have become innocently ensnared with dilatory pleading practices, a final opportunity to note their cause for trial even after the 1-year period of time had run. The amended

version also tends to eliminate the procedural confusion which may have [confronted] litigants in *counties with local rules* such as Rule 35(b) Special Rules of the Superior Court for King County.

77 Wn.2d at 608 (emphasis added).[2]

CR 41(b)(1) precludes dismissal of a case for want of prosecution when the party against whom dismissal is sought files a note for trial before the hearing on the motion to dismiss. Stevens filed his note for trial before the hearing on the Department's motion, and the trial court thus erred in dismissing his case.

## CONCLUSION

The trial court erred in dismissing Stevens' petition for judicial review because the delay in noting the matter for trial was caused by the Department's failure to comply with RCW 34.05.566, and because Stevens noted the case for trial before the hearing on the Department's motion to dismiss for want of prosecution. Accordingly, we reverse the superior court and remand for proceedings consistent with this opinion.

---

[2] As an example of a case where, because of the operation of a local court rule, a plaintiff's attempt to note a case for trial was thwarted by the superior court, the *Yellam* court cited *Simpson v. Glacier Land Co.*, 63 Wn.2d 748, 750, 388 P.2d 947 (1964). 77 Wn.2d at 608. In that case, the plaintiff filed a trial notice but the superior court clerk refused to accept it because the notice did not comply with King County Rule 35(b). *Simpson*, 63 Wn.2d at 750.

No. 57858-1-II

CRUSER, A.C.J.

We concur:

MAXA, J.

VELJACIC, J.